**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **LISA F.**,<br><br>　　　　　*Plaintiff,*<br><br>　　v.<br><br>**COMMISSIONER OF SOCIAL SECURITY**,<br><br>　　　　　*Defendant.* | No. 25-cv-01991<br><br>**OPINION** |

<u>**APPEARANCES**</u>:

**Timothy Joseph Mello**
JACOBS, SCHWALBE & PETRUZZELLI, P.C.
10 Melrose Ave, Suite 340
Cherry Hill, NJ 08003

　　　*On behalf of Plaintiff.*

**Andrew Charles Lynch**
**Catherine Elisabeth Hamilton**
SOCIAL SECURITY ADMINISTRATION
OFFICE OF PROGRAM LITIGATION
6401 Security Boulevard
Baltimore, MD 21235

　　　*On behalf of Defendant.*

**O'HEARN, District Judge.**

This matter comes before the Court on Plaintiff Lisa F.'s[1] ("Plaintiff") appeal from a denial of Social Security disability benefits and supplemental security income by the Commissioner of Social Security ("Commissioner"). (ECF No. 1). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, the Court **AFFIRMS** the Commissioner's decision.

## I.      BACKGROUND

The Court recites herein only those facts necessary for its determination on this appeal.

### A.  Administrative History

Plaintiff filed an application for disability insurance benefits ("DIB") on June 23, 2022. (AR 59). She alleges an onset date of disability beginning April 1, 2020. (*Id.*). Her claim was initially denied on October 21, 2022, and denied again on reconsideration on February 21, 2023. (AR 78, 84). On March 21, 2023, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). (AR 87–88). The ALJ held a telephonic hearing on March 7, 2024, and on May 1, 2024, issued an unfavorable decision denying Plaintiff benefits. (AR 18–30). The Appeals Council denied Plaintiff's request for review on January 23, 2025. (AR 5). Plaintiff timely filed her appeal to this Court on March 20, 2025. (ECF No. 1).

### B.  Plaintiff's Background and Testimony

Plaintiff was 51 years old on the alleged onset date. (AR 40). She is married, has a ten-year-old child, and holds an associate's degree in health sciences. (AR 42). She last worked in March 2020, when she held two jobs: a desk-based data-entry position for a fuel company and a

---

[1]  Pursuant to this Court's Standing Order 2021-10, this Opinion will refer to Plaintiff solely by first name and last initial.

per-diem job as an X-ray technologist at a hospital that required operating and moving imaging equipment. (AR 43–44).

Plaintiff testified that she is prevented from returning to work primarily due to psoriatic arthritis and interstitial lung disease. (AR 45). She has had psoriatic arthritis since age 22 and, despite trying multiple medications, she reported worsening daily pain, particularly in her back, knees, and feet. (AR 45–47). She testified that her lung disease progressed after contracting COVID-19 in April 2020, and the disease causes chronic coughing and significant shortness of breath even with minimal exertion. (AR 47–48). In addition to taking medication for her lung disease, she also completed approximately six weeks of cardiopulmonary rehabilitation but reported little improvement. (AR 48).

Plaintiff further described limitations in her extremities—primarily her hands—due to her arthritis and surgeries. Following bilateral hand surgery, she testified that pins in both thumbs and her right index finger prevent her joints from bending, leaving her with swelling, reduced sensation, difficulty gripping objects, and frequent dropping of items. (AR 46, 50–51). She stated that typing now requires her to use one finger and takes much longer than before. (AR 50). She also underwent right foot surgery and continues to experience daily pain. (AR 45).

Plaintiff also testified that breathlessness limits her ability to perform household tasks such as cleaning and laundry, and that her husband assists with many activities. (AR 48–49). She also reported anxiety triggered by breathing difficulties and insomnia caused by persistent coughing. (AR 51–52). She stated that she now spends much of her day watching television and can no longer perform activities such as yard work that she previously enjoyed. (AR 49–50).

### C.  Medical History

Plaintiff has been examined by several physicians during the relevant period. The Court will briefly summarize the relevant medical evidence for purposes of this Appeal. This recitation is not comprehensive.

#### 1.  Dr. Lee Osterman, M.D.

Dr. Osterman began treating Plaintiff in October 2018 for bilateral thumb pain and reduced range of motion. (AR 1434–36). He diagnosed Plaintiff with bilateral thumb carpometacarpal osteoarthritis, ulnar collateral ligament insufficiency of the metacarpophalangeal joints, and interphalangeal joint arthritis, which interfered with Plaintiff's ability to grasp objects and perform work-related tasks. (*Id.*).

In 2019, Dr. Osterman performed reconstructive surgery on both of Plaintiff's hands. (AR 367, 1441). Postoperative treatment included splinting and occupational therapy, during which Plaintiff reported diminished sensation and ongoing pain. (AR 461–62, 1432). Follow-up visits continued to document pain and numbness, including after Plaintiff jammed her thumb, and imaging later showed bone loss in the distal phalanx. (AR 451–54).

#### 2.  Dr. Linda Brecher, D.O.

Dr. Brecher, Plaintiff's rheumatologist, treated her for psoriatic arthritis and related autoimmune conditions. (AR 659). In September 2019, Dr. Brecher noted functional difficulty due to deformity and restrictions in Plaintiff's left thumb following surgery. (*Id.*). In December 2019, Plaintiff reported lower back pain radiating to the groin and leg, and Dr. Brecher observed increased joint pain after Plaintiff had discontinued methotrexate for several weeks. (AR 651–58). Treatment notes thereafter continued to document symptoms of inflammatory arthritis, including

4

swelling and soreness in the finger joints, knee pain with stair use, and findings consistent with Raynaud's disease and trigger finger. (AR 615–36).

Beginning in 2021, Plaintiff reported chronic cough and shortness of breath with exertion, including while climbing stairs or walking. (AR 580–91, 603). By January 2023, Plaintiff reported shortness of breath when walking several blocks or climbing stairs while carrying laundry. (AR 972). Treatment notes from 2024 continued to record dyspnea on exertion, persistent coughing, weight gain related to reduced activity and reported associated depression. (AR 1873–75, 84).

In November 2022, Dr. Brecher submitted a letter supporting Plaintiff's disability claim, stating that Plaintiff had experienced declining hand function and had sustained a rib fracture from severe coughing. (AR 903–04). She opined that Plaintiff's inflammatory interstitial lung disease and inflammatory polyarthritis rendered her unable to work. (*Id.*).

### 3.   Dr. Thomas Nugent, M.D.

Plaintiff began pulmonary treatment with Dr. Nugent in May 2022 for chronic cough and shortness of breath. Imaging studies showed interstitial changes and fibrosis in the lung bases. (AR 553–62). Pulmonary testing demonstrated a mild restrictive lung defect with decreased diffusion capacity, findings consistent with interstitial lung disease. (AR 532). Dr. Nugent noted Plaintiff's reports of persistent cough and worsening daily functioning, and recommended Plaintiff continue with her various medications, including Promethazine DM as needed. (AR 807–25).

### 4.   Dr. Randle Troy, D.O.

Dr. Troy is a cardiologist who evaluated Plaintiff in February 2023 for worsening shortness of breath on exertion. (AR 1334). An echocardiogram showed mild tricuspid regurgitation. (AR 943). A subsequent exercise stress test demonstrated mildly impaired exercise capacity with symptoms of dyspnea and lightheadedness during exertion. (AR 1241–42, 85).

5

5.   Dr. Suzanne Shenk, D.O.

Dr. Shenk treated Plaintiff for respiratory complaints and related symptoms. (*See* AR 1479–80). In October 2023, Plaintiff reported that shortness of breath and coughing were interfering with her ability to complete activities of daily living. (*Id.*). By December 2023, Plaintiff described progressive dyspnea on exertion, exhaustion, and uncontrolled coughing. (AR 1450). Dr. Shenk later completed a residual functional capacity questionnaire in April 2024. (AR 1885–88). She opined that Plaintiff's symptoms would require unscheduled breaks more than ten times per day and that Plaintiff's pain could incapacitate her for days at a time. (*Id.*).

6.   Other Imaging, Testing, and Treatment

In April 2022, Plaintiff was seen by urgent care for right heel pain. (AR 900–01). Imaging revealed a plantar calcaneal spur without fracture. (*Id.*). Plaintiff underwent right tarsal tunnel release and plantar fascia release surgery in August 2022. (AR 731). Physical therapy was recommended thereafter to address range-of-motion deficits, ankle weakness, and pain affecting daily activities and work. (AR 866).

Musculoskeletal imaging conducted in December 2019 also showed degenerative changes in Plaintiff's lumbar spine. (AR 716). A later MRI of the thoracic spine performed in March 2024 demonstrated T12–L1 spondylosis. (AR 1864–65).

Plaintiff also presented to hospital emergency departments several times due to pain associated with coughing. In October 2022, she sought treatment for back pain after a coughing episode and was treated with muscle relaxants and pain medication. (AR 770–74). A CT scan revealed an acute fracture of the left tenth rib. (AR 755). Plaintiff again sought emergency care in January 2024 for chest and back pain associated with coughing and shortness of breath. (AR 1518). Imaging showed reduced lung volumes and interstitial lung changes. (AR 1599). In March 2024,

she returned to the hospital with thoracic rib pain and was diagnosed with acute thoracic back pain and intercostal muscle strain. (AR 1866–71).

Plaintiff participated in cardiopulmonary rehabilitation beginning in April 2023 and attended multiple sessions. (*See* AR 1733). Those records also include mental health screening results based on a questionnaire submitted by Plaintiff, which yielded a score consistent with mild depression. (AR 1849).

## II.    LEGAL STANDARD

### A.  Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citation omitted). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citations omitted); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations, quotation marks, and alteration omitted); *see also Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009).

The substantial evidence standard is a deferential standard, and an ALJ's decision cannot be set aside merely because a Court "acting *de novo* might have reached a different conclusion." *Hunter Douglas, Inc. v. N.L.R.B.*, 804 F.2d 808, 812 (3d Cir. 1986) (citations omitted); *see e.g.*,

*Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citation omitted).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). "The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Id*. The Court has a duty to "'review the evidence in its totality,' and 'take into account whatever in the record fairly detracts from its weight.'" *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018) (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997)). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Hum. Servs.,* 722 F.2d 1150, 1153 (3d Cir. 1983) (citation omitted). Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citation omitted).

### B.  Sequential Evaluation Process

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i)–(v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" If [s]he is, [s]he is not disabled. Otherwise, the ALJ moves on to step two.

> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" If the claimant lacks such an impairment, [s]he is not disabled. If [s]he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" If the claimant's impairments do, [s]he is disabled. If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether [s]he can perform [her] "past relevant work." A claimant's "[RFC] is the most [she] can still do despite [her] limitations." If the claimant can perform [her] past relevant work despite [her] limitations, [s]he is not disabled. If [s]he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering [her] "[RFC,] . . . age, education, and work experience[.]" That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." If the claimant can make an adjustment to other work, [s]he is not disabled. If [s]he cannot, [s]he is disabled.

*Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (internal citations and footnote omitted) (alterations in original).

### III.    <u>ALJ DECISION</u>

In their May 1, 2024 decision, the ALJ applied the five-step sequential evaluation process and concluded that the claimant was not disabled within the meaning of the Social Security Act from April 1, 2020, through the date of the decision. (AR 21–30).

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of April 1, 2020. (AR 23).

At Step Two, the ALJ determined that Plaintiff had three severe impairments: interstitial lung disease, psoriatic arthritis, and a history of hand surgery. (AR 23). The ALJ also identified other medically determinable conditions—history of ankle surgery, gastroesophageal reflux disease, and kidney stones—but concluded that these were non-severe because they imposed no

more than minimal functional limitations and, in the case of the ankle condition, did not satisfy the twelve-month durational requirement. (AR 23–24).

At Step Three, the ALJ found that none of the claimant's impairments, alone or in combination, met or medically equaled a listed impairment. (AR 24). The ALJ specifically considered Listing 3.02 (chronic respiratory disorders) and Listing 14.09 (inflammatory arthritis) but concluded that the objective medical evidence—including pulmonary function testing and findings concerning joint involvement and constitutional symptoms—did not satisfy the criteria of those listings. (AR 24).

Before proceeding to Step Four, the ALJ assessed Plaintiff's RFC, finding that Plaintiff retained the capacity to perform light work except:

> [S]he can climb ramps and stairs frequently. She can occasionally climb ladders, ropes, and scaffolds. She can frequently balance, as defined in the SCO. She can frequently stoop, occasionally kneel, frequently crouch, and occasionally crawl. The claimant should avoid concentrated exposure to unprotected heights, moving mechanical parts, dusts, odors, fumes, and pulmonary irritants, extreme cold, and extreme heat.

(AR 24).

At Step Four, relying on vocational expert ("VE") testimony, the ALJ concluded that the claimant could perform her past relevant work as a data-entry clerk and as a radiology technician, as those jobs are generally performed in the national economy. (AR 29–30). Because this work did not require activities inconsistent with the assessed RFC, the ALJ found that Plaintiff was capable of returning to her past relevant work, and thus, not disabled. (AR 29–30).

Finding Plaintiff not disabled at step four, the ALJ did not proceed to Step Five. (*See id.*).

IV.    **DISCUSSION**

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to properly evaluate her alleged mental impairments and failed to account

for her severe hand impairment. (Pl.'s Br., ECF No. 5 at 23, 26, 29). Plaintiff also argues that the ALJ inadequately considered her subjective complaints of pain and other symptoms. (*Id.* at 30).

After reviewing the administrative record, the Court concludes that the ALJ's decision is supported by substantial evidence and will therefore be affirmed. Because the Court reaches this conclusion, Plaintiff's accompanying request for summary judgment in her favor is denied. (*See id.* at 34).

**A.  The ALJ's RFC Determination is Supported by Substantial Evidence**

Plaintiff makes two arguments as to why the RFC is not supported by substantial evidence. First, Plaintiff argues that the ALJ failed to properly evaluate her mental impairments under the Psychiatric Review Technique ("PRT"), leading to "downstream effects" on Plaintiff's RFC. (Pl.'s Br., ECF No. 5 at 26–29). Second, she argues that her history of hand surgery—found to be "severe" at Step Two—was not properly incorporated into the RFC. (*Id.* at 29–30). The Court will address each argument in turn and ultimately, concludes the ALJ's RFC determination is supported by substantial evidence.

1.  <u>Mental Impairments and the PRT</u>

Plaintiff argues that the ALJ's failure to conduct the PRT despite her "longstanding depression" and anxiety is harmful error and rendered the ALJ's RFC determination defective.[2] (Pl's Br., ECF No. 5 at 26). The Court disagrees.

The PRT is a "special technique" used to "evaluate the severity of mental impairments for adults . . . at each level in the administrative review process." 20 C.F.R. § 404.1520a(a). In

---

[2]  Plaintiff does not argue that her mental impairments, properly considered, were "severe" at Step Two nor that such a severe mental impairment "met or medically equaled" a specific listed impairment at Step Three. (*See* Pl.'s Br., ECF No. 5 at 26–27 ("The findings in the PRT are then used in shaping the RFC")). Rather, she contends that the ALJ's failure to conduct a PRT had "marked downstream effects on the Decision's RFC, rendering it incomplete." (*Id.* at 29).

performing a PRT, an ALJ must "first evaluate [the claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [they] have a medically determinable mental impairment(s)." 20 C.F.R. § 404.1520a(b)(1) (citing 20 C.F.R. § 404.1521). Once established, the ALJ "must then rate the degree of functional limitation resulting from the [mental] impairment(s)" based on four specific criteria, and document their application thereof in their decision. 20 C.F.R. § 404.1520a(b)(2), (c), (e). Here, two factors undermine Plaintiff's arguments that the ALJ's failure to conduct a PRT was harmful error—one procedural and one substantive.

Procedurally, Plaintiff did not allege mental disabilities in her DIB application. The ALJ does not have an obligation to consider impairments that are not alleged in a DIB application or at a hearing. *See Galbreath v. Colvin*, No. 13-2157, 2014 WL 4923233, at *14 (M.D. Pa. Sep. 30, 2014) (finding that "the ALJ did not have the obligation to address any mental health impairments raised" by a medical expert at the hearing where mental impairments "were not alleged"); *Podsiad v. Astrue*, No. 07-841, 2010 WL 662211, at *21 (D. Del. Feb. 22, 2010) ("There is no requirement that an ALJ consider impairments that a claimant does not allege are disabling—and Podsiad did not, in either her application or at the hearing, allege that her obesity was disabling."), *report and recommendation adopted*, 2010 WL 1336405 (D. Del. Mar. 31, 2010); *Rutherford v. Barnhart*, 399 F.3d 546, 552–53 (3d Cir. 2005) (holding that where the claimant did not allege obesity as a disabling limitation in the benefits application or at the hearing, the ALJ's reliance on the medical record sufficiently accounted for the condition and remand for explicit discussion was unnecessary).

Here, Plaintiff only raised her mental impairments in a pre-hearing letter to the ALJ—submitted a week before the hearing—and briefly at the hearing itself. (*See* AR 41, 336). In the letter, Plaintiff's counsel cursorily noted that additional medical records were requested and asked

the ALJ to have consultative examinations with an internist or psychologist be scheduled. (AR 336). At the hearing, counsel reiterated this position and noted that Plaintiff was "under treatment for anxiety and gets [appropriate] medication." (AR 41). However, neither the letter nor counsel's reiteration of it at the hearing allege any specific limitations derived from these belatedly identified mental impairments. Thus, the ALJ had no obligation to consider them.[3]

Substantively, even if the ALJ were required to consider Plaintiff's alleged mental impairments, any failure to do so would amount to harmless error. *See Hill v. Comm'r of Soc. Sec.*, No. 19-20115, 2020 WL 7694007, at *2 (D.N.J. Dec. 24, 2020) ("Plaintiff . . . bears the burden, on appeal, of showing not merely that the Commissioner erred, but also that the error was harmful."). The record contains no objective medical evidence establishing a medically determinable mental impairment, and therefore the ALJ was not required to perform a PRT analysis.

A PRT is only "required once the claimant's burden of establishing a medically determinable impairment is met." *Wilson v. Colvin*, No. 16-2411, 2017 WL 9511142, at *6 (E.D. Pa. Feb. 8, 2017), *report and recommendation adopted sub nom.*, *Wilson v. Berryhill*, 2017 WL 2991838 (E.D. Pa. July 14, 2017). To establish a medically determinable impairment, a claimant must produce "medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §

---

[3] None of this is to say that Plaintiff forever waived entitlement to benefits based on her mental impairments. Social Security Regulations permit a claimant to file a new, subsequent application for a condition which has worsened after the relevant period. *See, e.g.*, Social Security Ruling ("SSR") 11–1P, 2011 WL 3962767, at *2 (explaining that a claimant is not allowed to have two claims for the same type of benefits pending at the same time, but that rule does not preclude a claimant from reporting new or worsening medical conditions); *id.* at *4 (explaining that a claimant may file a subsequent claim under a different title or for a different benefit type at any time, even when an appeal is pending).

404.1521. A claimant's own "statement of symptoms, a diagnosis, or a medical opinion" are insufficient. *Id.*

Here, Plaintiff points to several pieces of record evidence to demonstrate that her anxiety and depression were medically determinable. (*See* Pl.'s Br., ECF No. 5 at 27–28, 32 (citing AR 603, 1472, 1480, 1730, 1849, 1873–75, 1884)). However, upon closer review, the record does not go as far as Plaintiff suggests.

Most notably, there are no psychiatric or psychological treatment records at all. Plaintiff instead asserts that she "was diagnosed with depression" by her rheumatologist Dr. Brecher. (Pl.'s Br., ECF No. 5 at 28). But Dr. Brecher's treatment notes do not report a "diagnosis" of depression. Those notes simply record that Plaintiff reported feeling "depressed and very frustrated" and "expresses depressed feelings" related to weight gain. (AR 1873–75 (dated Mar. 26, 2023); *see also* AR 1472 (dated Nov. 7, 2023, noting same); AR 1480 (dated Oct. 19, 2023, noting same)). Other providers similarly documented, without performing any evaluation and/or making any diagnosis, Plaintiff's subjective reports of depression and anxiety. For example, like Dr. Brecher, Dr. Shenk noted that Plaintiff reported "feel[ing] more depressed" due to weight gain. (AR 1730). Likewise, a questionnaire completed by Plaintiff during treatment at Virtua Cardiopulmonary Rehabilitation rated her depression as a "6," which the form classifies as "mild." (AR 1849).

Nor does Plaintiff's testimony that she "has a prescription for anxiety," (Pl.'s Br., ECF No. 5 at 9 (citing AR 51)), or Dr. Brecher's notation that Plaintiff was "taking [an] SSRI," (AR 1884), alter this analysis. The record contains no medical evidence documenting a diagnosis of anxiety or depression, or any medications prescribed for such conditions. Plaintiff's self-report that she takes medication for mental health symptoms, standing alone, does not establish a medically determinable impairment in the absence of objective medical evidence confirming the condition.

14

*See* 20 C.F.R. § 404.1521; *see also Pruznick v. Colvin*, No. 15-575, 2016 WL 11263675, at *2 (N.D. Okla. Dec. 5, 2016) (recommending affirming the ALJ's decision where "[t]he entire medical record concerning [p]laintiff's alleged mental impairments" consisted of a note indicating a prescription for anxiety medication, such that "even if it were error for the ALJ to have failed to perform a PRT analysis, such error was harmless as there is no reason to believe that a remand for the ALJ to provide a PRT analysis would lead to a different result."), *report and recommendation adopted sub nom*, *Pruznick v. Berryhill*, 2017 WL 877294 (N.D. Okla. Mar. 6, 2017).

Against this entire backdrop, Plaintiff's contention that the ALJ "flagrant[ly] disregard[ed]" her alleged mental impairment lacks merit. (Pl.'s Br., ECF No. 5 at 29). It is Plaintiff's obligation "to have [relevant] testing performed" and to include those "results in the record for the ALJ to consider at the hearing if this information" is material to her disability claim. *Wilson v. Comm'r of Soc. Sec.*, No. 15-3096, 2018 WL 524548, at *12 (D.N.J. Jan. 23, 2018). Given that Plaintiff failed to allege mental impairments, let alone develop an adequate record of them, it is unsurprising that the ALJ mentioned Plaintiff's depression only once. (*See* AR 27). But without additional supporting evidence from Plaintiff, the ALJ was not required to conduct a more extensive analysis, including the PRT.

For these reasons, the ALJ's decision regarding Plaintiff's mental impairments is supported by substantial evidence.

### 2. Hand Limitations

Plaintiff contends that the RFC is "facially deficient" because, although the ALJ found her history of hand surgery to be a severe impairment at Step Two, "the RFC makes no mention of restrictions that would result from this severe hand impairment." (Pl.'s Reply Br., ECF No. 8 at

6).[4] Alternatively, it seems, Plaintiff argues that her limited hand function is not adequately covered by the RFC. (*See* Pl.'s Br., ECF No. 5 at 29). Neither argument is persuasive.

With respect to Plaintiff's "facial" attack on the RFC, the law is clear that "no incantations are required" at later steps in the sequential evaluation process "simply because a particular finding has been made at steps two and three." *Hess*, 931 F.3d at 209; *see also Stanley v. Comm'r of Soc. Sec.*, No. 16-8619, 2017 WL 5667998, at *9 (D.N.J. Nov. 27, 2017) ("This Court finds no legal support for Plaintiff's threshold argument that the ALJ's finding of a severe impairment of arthritis of the toes required some specific limitation in the RFC determination referencing or tailored to that severe impairment over and above the medium work exertional limitation itself."). Thus, the ALJ's finding of Plaintiff's "severe" history of hand surgery at Step Two, and subsequent omission of limitations explicitly tailored to that impairment, is not reversible error.

Plaintiff's alternative but related argument is similarly unpersuasive. In determining an individual's RFC, the ALJ is required to consider all relevant evidence in record but, as noted, "does not need to use particular language or adhere to a particular format in conducting [the] RFC analysis." *Lorie H. v. Comm'r of Soc. Sec.*, No. 20-13192, 2022 WL 2803168, at *6 (D.N.J. July 18, 2022). "[S]o long as 'there is sufficient development of the record and explanation of findings to permit meaningful review[,]'" a reviewing court will not disturb the ALJ's RFC findings. *Tompkins v. Astrue*, No. 12-1897, 2013 WL 1966059, at *13 (D.N.J. May 10, 2013) (quoting *Jones*, 364 F.3d at 505).

---

[4] In her Reply Brief, Plaintiff seems to direct this argument to the adequacy of the ALJ's hypotheticals to the VE. (*See* ECF No. 8 at 5). To the extent Plaintiff challenges the hypotheticals posed to the VE for the first time in her Reply Brief, the Court declines to consider them. *See Ribaudo v. Saul*, No. 17-7207, 2020 WL 5088635, at *10 (D.N.J. Aug. 28, 2020) (recognizing that courts may decline to address arguments raised for the first time in a reply brief in a Social Security appeal).

Here, the RFC limited Plaintiff to light work subject to the following limitations:

[S]he can climb ramps and stairs frequently. She can occasionally climb ladders, ropes, and scaffolds. She can frequently balance, as defined in the SCO. She can frequently stoop, occasionally kneel, frequently crouch, and occasionally crawl. The claimant should avoid concentrated exposure to unprotected heights, moving mechanical parts, dusts, odors, fumes, and pulmonary irritants, extreme cold, and extreme heat.

(AR 24).

This RFC finding is supported by substantial evidence. The ALJ expressly considered Plaintiff's history of hand surgery and related symptoms when formulating the RFC, but concluded that the "full extent of her allegations regarding the nature and extent of her limitations are not . . . fully supported," and thus did not support greater limitations above and beyond those required by "light work." (AR 28). To support this conclusion, the ALJ reviewed the medical history of Plaintiff's hand condition, noting that she underwent left thumb carpometacarpal ligament reconstruction and tendon interposition arthroplasty in September 2019 due to end-stage osteoarthritis. (AR 26). However, the ALJ explained that subsequent evidence reflected meaningful recovery. In particular, the ALJ noted that, by June 2020, Plaintiff reported that she was able to lay pavers in her yard and work with tools, as well as participate in tubing, playing basketball, and "managing daily activities." (AR 26–28). The ALJ found all of these activities to reflect "an overall higher capacity for physical functioning than [Plaintiff] alleged at the hearing." (AR 28).

Moreover, the ALJ evaluated later hand treatment notes which documented some swelling and bony enlargement of finger joints, but frequently noted no pain, good grip strength, and full range of motion. (AR 26–28). While Plaintiff occasionally reported symptoms such as finger pain, morning stiffness, and difficulty gripping or buttoning, other records reflected improvement or stability with medication and indicated that Plaintiff denied hand weakness or numbness and reported that her peripheral arthritis was "doing good." (AR 27–28). Although Dr. Brecher

17

suggested that Plaintiff had limitations in hand function, the ALJ found that opinion less persuasive because it was conclusory, lacked a function-by-function assessment, and was inconsistent with treatment notes and Plaintiff's reported activities. (AR 28–29). By contrast, the ALJ found the state agency medical consultants' findings persuasive, noting that they reviewed evidence of Plaintiff's hand surgery, clinical examinations, and joint findings and concluded that Plaintiff could perform a range of light work. (AR 29).

Accordingly, the ALJ determined that, while Plaintiff's history of hand surgery constituted a severe impairment, the objective medical evidence and opinion evidence supported an RFC limiting Plaintiff to light work without further restrictive manipulative limitations. (AR 24, 29). The ALJ thoroughly explained how he arrived at this conclusion, including explaining why some conflicting evidence was credited over others. *See Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) ("[W]here there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination.").

For these reasons, the ALJ's RFC determination is supported by substantial evidence, both as to Plaintiff's mental impairments and hand impairments.

### B. The ALJ Properly Considered Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ failed to properly evaluate her testimony concerning the severity of her mental and physical impairments. (Pl.'s Br., ECF No. 5 at 30–34). Much of this argument overlaps with issues the Court has already addressed. The Court nevertheless considers it separately here and reaches the same conclusion: Plaintiff has not shown harmful error.

Subjective allegations of pain or symptoms do not alone establish a disability. *See Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)). Rather, objective medical evidence is required to corroborate the subjective complaints of the

claimant. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)).

When evaluating a claimant's subjective statements, the ALJ follows a two-step inquiry. First, the ALJ must determine whether there is a medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's alleged pain or other symptoms using a number of factors. *See* SSR 16-3p, 2017 WL 5180304, at *3, 7–8. If such an impairment exists, the ALJ must then assess the "intensity, persistence, and limiting effects" of the symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. *Id.* In conducting this analysis, the ALJ must explain specifically why the claimant's statements regarding the intensity, persistence, and limiting effects of the symptoms are discounted. *Scott R. v. Kijakazi*, 643 F. Supp. 3d 483, 495 (D.N.J. 2022).

Here, the ALJ followed this two-step evaluation process and his conclusions are supported by substantial evidence. The ALJ first considered Plaintiff's underlying, medically determinable physical or mental impairments, specifically referencing her pulmonary impairments, psoriatic arthritis, and history of hand problems. (*See* AR 25–29). The ALJ acknowledged Plaintiff's testimony regarding her arthritis pain, respiratory limitations, shortness of breath, constant coughing, and difficulty using her hands for various tasks. (*Id.*). Although the ALJ found that Plaintiff's medically determinable impairments could reasonably cause these symptoms, he concluded that her statements regarding their intensity and limiting effects were "not entirely consistent with the medical evidence and other evidence in the record." (AR 25). In doing so, the ALJ identified treatment notes and clinical findings that contradicted the severity of Plaintiff's subjective complaints, such as examinations showing swelling and joint enlargement but no pain, good grip strength, full range of motion, and medication that reportedly effectively controlled her

19

arthritis. (AR 26–27). The ALJ also relied on pulmonary testing showing normal or near-normal findings, including pulmonary function tests and six-minute walk tests demonstrating normal exercise capacity without cardiopulmonary limitation. (AR 26–27).

Based on these findings, the ALJ determined that Plaintiff's subjective complaints were not fully supported by the record. (AR 25–28). To the extent Plaintiff "asks this Court to re-evaluate the weight assigned to evidence that was adequately considered . . . [t]his Court declines to do so." *Alycea K. v. Kijakazi*, No. 17-02683, 2022 WL 17733663, at *7 (D.N.J. Dec. 16, 2022).

The ALJ's decision is therefore supported by substantial evidence.

<strong><u>CONCLUSION</u></strong>

For the foregoing reasons, the Court **AFFIRMS** the final decision of the Commissioner. An appropriate Order will follow.

**CHRISTINE P. O'HEARN**
**United States District Judge**